**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 10 2012, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Collignon & Dietrick
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MARCOUS FORD, )<br><br>Appellant-Defendant, )<br><br>vs. )<br><br>STATE OF INDIANA, )<br><br>Appellee-Plaintiff. ) | No. 49A04-1112-CR-651 |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1103-FB-013964

**July 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Marcous Ford ("Ford") was convicted of Battery, as a Class B felony,[1] after a bench trial. He now appeals and raises a single issue for our review, namely, whether there was sufficient evidence to support his conviction.

We affirm.

**Facts and Procedural History**

On the afternoon of February 28, 2011, Ford was helping his then-girlfriend, Kindra Lesure ("Lesure"), assemble furniture after she moved into a new apartment in Indianapolis. With them were Lesure's two children, D.L., a two-year old, and J.L., an eight-month old infant. At around 2:00 p.m., Lesure left the apartment to go to work a few blocks away. When Lesure left, Ford was sitting on the floor with J.L. feeding him baby food; only Ford, D.L., and J.L. were in the apartment.

Around 6:00 p.m. that evening, Ford called Lesure at work and told her, "You need to come home. [J.L.]'s not breathing." (Tr. at 65.) Ford then hung up the phone and called 9-1-1.

Lesure rushed to the apartment. When she arrived, Lesure found J.L. limp, with his eyes rolling back in his head and his breathing impaired. Lesure picked up J.L., and J.L. vomited on her shirt.

An ambulance arrived at the scene. Paramedics began emergency treatment of J.L., and dispatch requested police assistance. Officer Joshua Fritsche ("Officer Fritsche") of the

---

[1] Ind. Code § 35-42-2-1(a)(4).

2

Indianapolis Metropolitan Police Department ("IMPD") was dispatched to the scene; as soon as he arrived, the ambulance rushed off to Methodist Hospital. Officer Fritsche requested that Officer Freddie Edwards ("Officer Edwards"), who was already en route to Lesure's apartment, change course, accompany the ambulance to the hospital, and remain there to relay information about J.L.'s condition.

Officer Fritsche remained at the apartment and spoke with Ford to find out what had happened to J.L. Ford told Officer Fritsche that he had been assembling a table and chairs, D.L. had been with him while J.L. was on a couch, and J.L. fell off the couch. Ford said he did not know how much time had elapsed between when J.L. fell off the couch and when he went to check on J.L. After Officer Edwards reported on J.L.'s condition, which included information that J.L. had suffered significant brain trauma, Officer Fritsche followed IMPD protocol and requested a detective come to investigate the incident.

IMPD Detective Eli McAllister ("Detective McAllister") received notification of Officer Fritsche's request. After speaking briefly with Officer Fritsche by telephone, Detective McAllister drove to Methodist Hospital to check on J.L.'s condition and speak with Lesure. By the time Detective McAllister arrived, J.L. had been placed on a respirator and had been diagnosed with large bilateral subdural hematomas (bleeding between the brain and skull on both sides of the brain). Examination by an ophthalmologist also revealed retinal hemorrhaging. All of these injuries were indicative of acceleration-deceleration traumatic injuries that only an adult could have inflicted upon J.L.

After making these initial inquiries, Detective McAllister drove to Lesure's apartment

3

to investigate the scene and speak with Ford. When Detective McAllister asked Ford about what had happened, Ford agreed to give a statement "then and there." (Tr. at 89.) Ford told Detective McAllister that he had been feeding J.L. when Lesure left, and put J.L. on a couch to sleep while he continued to assemble furniture. Ford said that at some point in the afternoon J.L. fell off the couch and when he went to check on J.L., the child vomited, was not breathing normally, and his limbs were postured strangely.

After speaking with Ford, Detective McAllister stepped outside the apartment and called Dr. Antoinette Laskey ("Dr. Laskey"), a pediatrician at Methodist Hospital who was a member of a Child Protection Team, to ask whether the injuries J.L. had suffered would have come from a fall from a couch onto a carpeted floor. Dr. Laskey said J.L.'s injuries—which included bleeding on J.L.'s brain in numerous places—were too severe to have come from a fall from a low couch.

After learning this information, Detective McAllister returned to the apartment, told Ford he had spoken with Dr. Laskey and that he had more questions, and asked Ford to speak with him at his IMPD office. Ford agreed to do so and travelled with Detective McAllister to his office, where Detective McAllister informed Ford of his Fifth Amendment rights and conducted a recorded interview. The interview yielded no new evidence.[2] At the interview's conclusion during the early morning hours of March 1, 2011, Detective McAllister arrested Ford.

---

[2] The total recorded length of the interview is more than five hours. After Ford pursued a motion to suppress portions of the interview on Fifth Amendment grounds, the trial court ruled as inadmissible all but approximately two hours of the interview.

4

On March 4, 2011, the State charged Ford with Battery, as a Class B felony, and Neglect of a Dependent, as a Class D felony.[3] After several continuances, on September 14, 2011, Ford waived his right to a jury trial.

A bench trial was conducted on October 20 and October 25, 2011. After the close of the State's evidence, Ford moved to dismiss both counts against him. The trial court granted Ford's motion as to Neglect of a Dependent, but not as to Battery. After the parties gave closing arguments, the trial court found Ford guilty of Battery.

On November 16, 2011, the trial court sentenced Ford to twelve years imprisonment, with ten years to be served in the Department of Correction and two years to be served in Community Corrections.

This appeal followed.

**Discussion and Decision**

Ford appeals his conviction for Battery, as a Class B felony, after a bench trial, raising the sole issue of whether there was sufficient evidence of intent to support his conviction. When reviewing a defendant's conviction for sufficiency of the evidence after a bench trial,

> [t]his court will not reweigh the evidence or assess the credibility of witnesses. Cox v. State, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom will be considered. Id. If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. Id. at 1028–29.

Sargent v. State, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

---

[3] I.C. § 35-46-1-4.

5

To convict Ford of Battery as charged, the State was required to prove beyond a reasonable doubt that Ford, being at least eighteen years of age, knowingly touched J.L., who was then younger then fourteen years of age, in a rude, insolent or angry manner, which resulted in serious bodily harm to J.L., namely, a substantial risk of death by subdural hematoma. I.C. § 35-42-2-1(a)(4); App. at 22. Ford contends that the State did not produce sufficient evidence to convict him as charged.

The evidence that favors the verdict establishes that Ford was the only adult at home with J.L. and D.L. when J.L. was injured. Lesure testified that only Ford, J.L., and D.L. were present in the apartment when she left for work on the afternoon of February 28, 2011. Detective McAllister and Officer Fritsche both testified that Ford stated that he was the only caregiver at the apartment, and Ford stated as much in the recorded interview.

Dr. Laskey testified that while falling off a couch or falling off a couch and striking a table might have caused the contact injuries found on the left side of J.L.'s head, the number and extent of the hematomas J.L. suffered were inconsistent with this scenario. Dr. Laskey further testified that J.L. could not have inflicted these injuries upon himself under his own power. Nor were they consistent with such scenarios as a fall down a flight of stairs or any possible injury that could be inflicted upon J.L. by his two-year old brother, D.L.

Rather, Dr. Laskey testified, the injuries J.L. suffered were the results of both a contact injury from J.L.'s head having hit a hard surface and an acceleration-deceleration injury with rotational forces. The latter set of injuries is characteristic of an infant being shaken or otherwise subjected to trauma that could not occur in a home-care setting as an

6

accident. Only actions that were "very obvious[ly] inappropriate" (Tr. at 17) and "extreme" (Tr. 16) for even an inexperienced caregiver could have resulted in the extent and types of injuries J.L. suffered.

There was thus sufficient evidence to establish beyond a reasonable doubt that only Ford could have inflicted the injuries suffered by J.L., and that, given the amount of force and nature of the acts required, such injuries were inflicted knowingly, that is, with awareness "of a high probability" that the conduct would result in serious injury to J.L. I.C. § 35-41-2-2(b). While Ford is correct that "there were scenarios in which Ford could have acted recklessly" (Appellant's Br. at 6), his argument largely asks us to reweigh evidence, which we cannot do. See Sargent, 875 N.E.2d at 767. We therefore affirm Ford's conviction for Battery, as a Class B felony.

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.